# United States Court of Appeals for the Federal Circuit

05-1384

GILDA INDUSTRIES, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Peter S. Herrick, of Miami, Florida, argued for plaintiff-appellant.

David S. Silverbrand, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; and Jeanne E. Davidson, Deputy Director. Of counsel was William Busis, Attorney, Office of General Counsel, Executive Office of The President, Office of the United States Trade Representative.

Appealed from: United States Court of International Trade

Judge Judith M. Barzilay

# United States Court of Appeals for the Federal Circuit

05-1384

GILDA INDUSTRIES, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED: May 1, 2006

_____

Before NEWMAN, BRYSON, and PROST, <u>Circuit Judges</u>

BRYSON, <u>Circuit Judge</u>.

Gilda Industries, Inc., appeals from a decision of the Court of International Trade dismissing Gilda's complaint for failure to state a claim upon which relief could be granted. <u>Gilda Indus., Inc. v. United States</u>, 353 F. Supp. 2d 1364 (Ct. Int'l Trade 2004). We affirm in part, vacate in part, and remand.

I

A

In December 1985 the European Community prohibited imports of the meat of animals that had been treated with hormones. The United States attempted to negotiate a change in the EC's policy. When those efforts failed, the United States

invoked formal dispute settlement proceedings before the World Trade Organization challenging the EC's ban on hormone-treated meat. In 1997 a WTO panel issued a report concluding that the EC's ban was contrary to its WTO obligations because the ban was not based on scientific evidence. The WTO's Dispute Settlement Body subsequently adopted the panel's report. Nevertheless, the EC did not implement the panel's recommendations. As a result, in 1999 the United States requested suspension of the duty concessions that WTO countries are obligated to grant to one another. The EC objected, and the matter was referred for arbitration. On July 12, 1999, the WTO arbitrator determined that the United States had suffered impairment as a result of the EC's ban and therefore authorized the United States to increase its duties on EC products.

Pursuant to section 301 of the Trade Act of 1974, the United States Trade Representative has authority to take certain retaliatory measures when this country's trade rights are violated by another country. In particular, 19 U.S.C. § 2416 authorizes the Trade Representative to create "retaliation lists," which subject certain products of the target countries to increased duties. On March 25, 1999, the Trade Representative published notice of his intention to implement retaliatory measures against the EC pursuant to the WTO dispute settlement agreement. Implementation of WTO Recommendations Concerning EC—Measures Concerning Meat and Meat Products (Hormones), 64 Fed. Reg. 14,486 (Mar. 25, 1999). After a notice and comment period for the proposed retaliatory measures, the Trade Representative adopted a retaliation list and subjected all the products on the list to a 100 percent ad valorem duty. Among

the listed products were those falling under HTSUS subheading 9903.02.35, which encompasses "[r]usks, toasted bread and similar products."

Shortly after the Trade Representative issued the retaliation list, Congress enacted the Trade and Development Act of 2000, Pub. L. No. 106-200, 114 Stat. 251. Section 407 of that Act amended 19 U.S.C. § 2416 to require the Trade Representative to modify retaliation lists periodically after their implementation.

B

Gilda imports toasted breads from Spain. Although toasted breads were included on the proposed retaliation list, Gilda did not submit any comments during the notice and comment period. In 2002 and 2003, three of Gilda's entries that were classified under subheading 9903.02.35 were subjected to the 100 percent retaliatory duty. Gilda filed protests with the Customs Service contesting the classification of the entries and the imposition of the retaliatory duty, but Customs denied the protests. In April 2003 Gilda filed a complaint with the Court of International Trade requesting reliquidation of its entries, refund of the duties it had paid as a result of the inclusion of its imports on the retaliation list, and removal of those products from the list. The court granted the government's motion to dismiss the complaint for failure to state a claim upon which relief could be granted. Gilda appeals.[1]

---

[1] The court also denied Gilda's motion for class certification. Although Gilda has challenged that ruling on appeal, we uphold the court's ruling that Gilda failed to satisfy the requirements of Rules 23(a) and (b) of the Rules of the Court of International Trade.

As a preliminary matter, the government contends that the Court of International Trade invoked the wrong jurisdictional provision in this case. Although the government agrees that the court had subject matter jurisdiction in this case, the government argues that the court had jurisdiction under 28 U.S.C. § 1581(a) and not under 28 U.S.C. § 1581(i). Under section 1581(a), the government argues, the court had no authority to consider the impact of the retaliation list on future entries, because review under section 1581(a) is limited to the three entries for which Gilda filed protests that were denied by Customs.

Gilda's complaint facially fits within section 1581(i)(2) because it arises out of a law providing for duties "on the importation of merchandise for reasons other than the raising of revenue" (i.e., the duty at issue was imposed as a retaliatory measure, designed to encourage foreign nations to comply with the WTO settlement agreement rather than to raise revenue). As the government correctly notes, however, section 1581(i) "supplies jurisdiction only for instances when no other subsection of [section 1581] is or could have been available, unless the other subsection provided no more than a manifestly inadequate remedy." Consol. Bearings Co. v. United States, 348 F.3d 997, 1002 (Fed. Cir. 2003) (internal quotation marks omitted). In this case, the government argues, section 1581(i) is unavailable because adequate review of Gilda's claims could be obtained pursuant to section 1581(a). We reject the government's argument.

Section 1581(a) confers jurisdiction on the Court of International Trade in "any civil action commenced to contest the denial of a protest" under the Tariff Act of 1930.

The Tariff Act lists seven "decisions of the Customs Service" as to which a protest may be filed. 19 U.S.C. § 1514(a). The principle underlying the limited availability of review under 28 U.S.C. § 1581(i) is that a party should not be allowed to circumvent the protest requirement—and thereby Customs' administrative review—simply by asserting jurisdiction under section 1581(i) and proceeding immediately to court without exhausting administrative remedies through the protest mechanism. However, the fact that Gilda was eligible to file protests, and in fact filed protests regarding the duties collected under the retaliation list, does not bar it from proceeding under section 1581(i) instead of section 1581(a). See, e.g., United States v. U.S. Shoe Corp., 523 U.S. 360, 363, 365 (1998) (although petitioner filed a protest, jurisdiction was available under section 1581(i)). Moreover, although the government assigns critical significance to the fact that Gilda has failed to show "irreparable harm to an industry and a substantial impact on the national economy," U.S. Cane Sugar Refiners' Ass'n v. Block, 683 F.2d 399, 402 n.5 (CCPA 1982), that is but one of the circumstances in which section 1581(a) might provide a manifestly inadequate remedy. See, e.g., Am. Ass'n of Exps. & Imps. v. United States, 751 F.2d 1239, 1245 (Fed. Cir. 1985) ("The objective of the addition of § 1581(i) was to make it clear that . . . prospective importers challenging Customs Service regulations imposing import restrictions need not attempt to import merchandise, file a protest and then contest the administrative denial of the protest in the CIT under § 1581(a).").

There is no reason to require exhaustion of Customs' administrative procedures when a party challenges a decision in which Customs played no part and over which Customs has no control. In U.S. Shoe Corp., for example, the Court held that the

petitioner's challenge to the Harbor Maintenance Tax could be brought under section 1581(i) because Customs "protests are not pivotal" when "Customs performs no active role, [but] merely passively collects HMT payments." 523 U.S. at 365. Similarly, in Mitsubishi Electronics America, Inc. v. United States, 44 F.3d 973, 976-77 (Fed. Cir. 1994), this court held that a challenge to an antidumping duty arises under section 1581(i) because "[t]he actions that [Mitsubishi] challenges . . . are not Customs decisions." Because Commerce, not Customs, calculates antidumping duties, the court explained, "Customs has a merely ministerial role in liquidating antidumping duties." Id. at 977.

As in U.S. Shoe and Mitsubishi, Gilda does not challenge any decision by Customs. The duty to which Gilda objects was imposed pursuant to a decision of the Trade Representative. Because Customs has no authority to overturn or disregard the Trade Representative's decision, Customs would have no authority to grant relief in a protest action challenging the imposition of the duty. Moreover, Gilda seeks more than mere review of particular duties imposed on products previously imported; Gilda's complaint seeks termination of the retaliation list or removal of its imports from the list. That portion of Gilda's complaint is beyond the scope of issues that could be protested under 19 U.S.C. § 1514(a). Therefore, limiting the court's review to the scope of the protests that Customs denied, which is what the government seeks to do by urging 28 U.S.C. § 1581(a) as the only proper jurisdictional basis, would provide an inadequate remedy in light of the relief sought in Gilda's complaint. Consequently, we agree with the Court of International Trade that Gilda's complaint invoked section 1581(i) jurisdiction.

III

Gilda contends that the Trade Representative has ignored certain provisions of 19 U.S.C. §§ 2416-17, and that if the Trade Representative had followed those provisions, toasted breads would not be subject to the retaliatory duty. In addition to urging that toasted breads should not be subject to the retaliatory duty, Gilda also asserts that it is entitled to a refund of the duties it paid on three entries as to which retaliatory duties were assessed.

A

Gilda's first argument is that retaliation lists may include only products of the industries that are affected by the foreign nations' noncompliance with the relevant WTO dispute settlement agreement (so-called "reciprocal goods"). Gilda argues that the Trade Representative was not authorized to include toasted breads on the hormone beef retaliation list because it was the domestic beef industry that was affected by the European Community's ban on beef imports, and toasted breads were therefore not "reciprocal goods."

Gilda misreads the statute. Although section 2416(b)(2)(F) requires the Trade Representative to include reciprocal goods on a retaliation list, nothing in the text of the statute or its legislative history suggests that nonreciprocal goods may not be included in addition to reciprocal goods. In fact, the legislative history of the Trade and Development Act of 2000, Pub. L. No. 106-200, § 407, 114 Stat. 251, 293-94, which added the reciprocal goods provision, suggests that Congress was particularly concerned that foreign nations might thwart the intended effect of a retaliation list by subsidizing products that were included on the list. Thus, Congress envisioned that the

Trade Representative would alter the retaliation list frequently, including additional products as a means of increasing pressure on the noncomplying nations. See, e.g., 145 Cong. Rec. 25,083 (1999) ("The Carousel bill requires the U.S. Trade Representative to rotate and revise the retaliation list so that countries violating WTO Dispute Settlements cannot merely subsidize the affected industries to recover from retaliation penalties."); 145 Cong. Rec. 26,934 (1999) (noting that under the proposed amendment, the Trade Representative would "seek other products to target and at tariff levels that will impose the kind of pain that will cause the European Union to see compliance as the remedy"). Thus, it is clear that Congress did not intend to prohibit the Trade Representative from including nonreciprocal goods on the retaliation list.

B

Gilda next argues that pursuant to 19 U.S.C. § 2417(c) the hormone beef retaliation list expired by force of law in July 2003, four years after its inception. Section 2417(c)(1) provides that actions taken under section 2411 (e.g., implementation of a retaliation list) terminate after four years unless a representative of the domestic industry "which benefits from" the action submits a written request for continuation of the action. Although Gilda acknowledges that representatives of the domestic beef industry submitted written requests for continuation of the retaliation list, Gilda argues that the domestic beef industry is not an industry "which benefits from" the retaliation list. Gilda contends that the domestic beef industry cannot be said to be a beneficiary of the retaliation list unless and until the EC responds to the retaliatory measure by complying with the WTO settlement agreement.

That view of the statute makes no sense. The domestic beef industry "benefits from" the retaliation list because the list exerts pressure on foreign nations to comply with the WTO settlement agreement. Therefore, the domestic beef industry's request for continuation of the retaliation list is exactly the sort of request contemplated in section 2417(c)(1). Under Gilda's view, a domestic industry could never request continuation of a retaliation list, because the industry would not be said to "benefit from" the list until the list had served its ultimate purpose, at which time there would be no reason to keep the list in effect.

Gilda also argues that the Trade Representative failed to comply with 19 U.S.C. § 2417(c)(3). That statute requires the Trade Representative, after receiving a request for continuation of a retaliation list, to conduct a review of the effectiveness of the list and of its effects on the national economy. The Court of International Trade noted that counsel for the Trade Representative stated during oral argument that the required review had begun. Although the trial court's opinion referred only to that statement of counsel, the court was presented with additional evidence showing that the Trade Representative had begun the required review. In particular, the record contains copies of emails showing progress on the initial stages of the review, and spreadsheets of data that were compiled for purposes of the review.

Gilda does not appear to contest the government's basic point that the review has begun. Rather, Gilda argues that the Trade Representative has not conducted a hearing on the effectiveness of the retaliation list and that the Trade Representative has not yet completed his review. The government, however, is not required to establish either of those facts to show that the Trade Representative has complied with the

statute. All that the statute requires is that the Trade Representative "conduct a review." The statute does not specify a particular method or timeline for completing the review, and we see no suggestion—in the record or in Gilda's arguments to this court—that the Trade Representative has unreasonably delayed the review. Moreover, the statute does not provide, as Gilda argues, that the Trade Representative's failure to conduct the required review necessarily results in the termination of the retaliation list. Thus, we see no error in the court's conclusion that Gilda could prove no set of facts that would entitle it to relief under section 2417(c)(3).

C

Gilda next argues that the Trade Representative failed to comply with the "carousel provision" of section 2416. Because of that failure, Gilda contends that its imports should be removed from the retaliation list and that it should be refunded the duties it has paid on those imports.

The carousel provision states that the "Trade Representative shall, 120 days after the date the retaliation list or other section 2411(a) action is first taken, and every 180 days thereafter, review the list or action taken and revise, in whole or in part, the list or action to affect other goods of the subject country or countries." 19 U.S.C. § 2416(b)(2)(C). It is undisputed that the Trade Representative has not revised the hormone beef retaliation list since implementing it in July 1999. The Court of International Trade held that the Trade Representative had not violated the "review and revise" requirement, however, because the court concluded that one of the statutory exceptions to that requirement applies in this case. That exception provides that the Trade Representative is not required to revise the retaliation list if he "determines that

implementation of a recommendation made pursuant to a dispute settlement proceeding . . . is imminent." 19 U.S.C. § 2416(b)(2)(B)(ii)(I).[2]  Additionally, the court concluded that even if the Trade Representative failed to comply with the carousel provision, that would not entitle Gilda to have its imports removed from the retaliation list or to a refund of retaliatory duties.  To the extent that the court dismissed Gilda's claim based on the conclusion that those remedies were not available, the court appears to have assumed that those were the only plausible remedies.

For the reasons detailed below, we believe the applicability of the statutory exception in this case requires consideration of evidence and findings of fact.  The record is insufficient to support the court's conclusion that the statutory exception applies in this case as a matter of law.  The court thus erred by dismissing Gilda's complaint for failure to state a claim upon which relief can be granted, and we therefore remand for further consideration of the statutory exception issue.

1

As a preliminary matter, in order to have standing to object to the Trade Representative's failure to review and revise the retaliation list, Gilda was required to prove that it met Article III standing requirements.  Gilda's claim is that the Trade Representative's failure to comply with the carousel provision caused Gilda's imports to remain on the retaliation list, thereby subjecting Gilda to retaliatory duties.  Gilda satisfies Article III standing to bring that claim because Gilda "has suffered some actual

---

[2]    The other statutory exception provides that the retaliation list need not be revised if "the Trade Representative together with the petitioner involved in the initial investigation . . . agree that it is unnecessary to revise the retaliation list."  19 U.S.C. § 2416(b)(2)(B)(ii)(II).  The government does not assert that that exception is applicable in this case.

. . . injury" that "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision." Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982). Although review and revision of the list would not necessarily have led to the removal of Gilda's imported products from the list, the failure to conduct review and revision of the list injured Gilda by depriving it of at least an opportunity to have those products removed. Cf. FEC v. Akins, 524 U.S. 11, 25 (1998) (the fact that the FEC could "still have decided in the exercise of its discretion not to require AIPAC to produce the information . . . does not destroy Article III 'causation,' for we cannot know that the FEC would have exercised its prosecutorial discretion in this way"). That is a sufficient injury to be cognizable under the test for Article III standing.

In addition to Article III standing requirements, courts applying the judicial review standards of the Administrative Procedure Act, 5 U.S.C. § 702, determine whether the plaintiff has standing to seek review under that statute based on "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." Ass'n of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 153 (1970); see also Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co., 522 U.S. 479, 488-96 (1998); Air Courier Conference of Am. v. Am. Postal Workers Union, AFL-CIO, 498 U.S. 517, 523-31 (1991). In this case, it is an open question whether Gilda's interests are "arguably within the zone of interests to be protected" by the carousel provision for purposes of review under 28 U.S.C. § 2631(i), which incorporates the judicial review standard of the Administrative Procedure Act for actions brought under 28 U.S.C. § 1581(i). On the one

hand, the injury Gilda complains of is precisely the "pain" Congress intended to inflict through the carousel provision. Senator DeWine made that point clearly in the course of the Senate debate on the Trade and Development Act of 2000:

> What is a nation to do if its current list of imports subject to retaliatory tariffs is not working to move the offender such as the E.U. into compliance? The solution, I believe, is to seek other products to target and at tariff levels that will impose the kind of pain that will cause the European Union to see compliance as the remedy. . . . That is what this amendment is about.

145 Cong. Rec. 26,933-34 (1999). Thus, Gilda's suit may be viewed as seeking relief that is contrary to, and would frustrate, the objectives of the statute. See Clarke v. Sec. Indus. Ass'n, 479 U.S. 388, 397 n.12 (1987) (the zone of interests test "seeks to exclude those plaintiffs whose suits are more likely to frustrate than to further statutory objectives"). On the other hand, we have questioned whether importers who otherwise meet the requirements of 28 U.S.C. § 2631 to bring a suit challenging Customs' denial of a protest should be required to show that their interests fall within some additional zone of interests. Florsheim Shoe Co. v. United States, 744 F.2d 787, 790 (Fed. Cir. 1984) ("We find it difficult to accept the Government's overriding premise as to the need for a proper protester also to be within some external 'zone of interests' . . . .").

In the end, we do not need to reach or decide the question whether Gilda satisfies the standing requirements of the Administrative Procedure Act, because the government did not contend in its brief that Gilda's complaint should be barred by the zone of interests test. The government has thus waived that argument. See Duty Free Int'l, Inc. v. United States, 88 F.3d 1046, 1048 (Fed. Cir. 1996) (concluding that the zone of interests test is not jurisdictional, and therefore that the government waived that

argument by failing to raise it). We therefore proceed to the merits of Gilda's arguments regarding the carousel provision.

2

As noted above, the government does not dispute Gilda's claim that the Trade Representative has never "reviewed and revised" the hormone retaliation list, as generally required by 19 U.S.C. § 2416(b)(2)(C). Rather, the government argues that 19 U.S.C. § 2416(b)(2)(B)(ii)(I)—a statutory exception from the "review and revise" requirement of the carousel provision—applies in this case because the Trade Representative has determined that resolution of the hormone beef dispute is imminent. The Court of International Trade accepted that argument and dismissed Gilda's complaint for failure to state a claim.

The problem with that disposition is that if the Trade Representative has never made the required determination, the Trade Representative's inaction is not excused by the statutory exception. Thus, before concluding that the statutory exception applies, the court must determine, as a factual matter, whether the Trade Representative has actually determined that resolution of the hormone beef dispute is imminent. In particular, the court must consider evidence submitted by the parties bearing on that question.

At this stage of the litigation, the evidence of record falls short of establishing that the Trade Representative has determined that resolution of the hormone beef dispute is imminent. For instance, in response to the government's motion to dismiss, Gilda submitted a copy of an email sent by an official at the Office of the Trade Representative, which indicates that as of May 2004 the Office of the Trade

Representative was considering whether to extend the retaliation list to cover countries that had recently joined the European Union. That email suggests that the Trade Representative foresaw a continuing need for the retaliation list. Additionally, Gilda has proffered a press release issued by the Office of the Trade Representative in May 2000. That document refers to the two exceptions to the carousel provision and notes that "[a]t this time, neither of these exceptions appears to apply." Press Release, Office of the United States Trade Representative, <u>USTR Announces Procedures for Modifying Measures in EC Beef and Bananas Cases</u> (May 26, 2000).

In concluding that the statutory exception applies in this case, the Court of International Trade pointed to a statement by the government's counsel at oral argument, in which counsel stated that "in this case because the USTR believes that a solution with the European Communities is imminent it has not implemented the Carousel provision." That single statement by counsel, however, is not sufficient to support the court's conclusion that the Trade Representative has actually "determine[d] that implementation of a recommendation made pursuant to a dispute settlement proceeding described in clause (i) by the country is imminent," which is what the statutory exception requires. <u>See</u> <u>In re Budge Mfg. Co.</u>, 857 F.2d 773, 776 (Fed. Cir. 1988) (attorney statements are "no evidence"); <u>see also</u> <u>Johnston v. IVAC Corp.</u>, 885 F.2d 1574, 1581 (Fed. Cir. 1989) (attorney argument is no substitute for evidence).

On appeal, the government points to a March 2005 report by the Office of the Trade Representative. <u>See</u> Office of the Trade Representative, <u>2005 Trade Policy Agenda and 2004 Annual Report</u> (Mar. 2005). The government argues that that report indicates that the Trade Representative believed that resolution of the hormone dispute

was imminent and that the statutory exception was therefore applicable.[3]  The report, however, merely mentions that the EC "sought consultations under the WTO . . . claiming that the EC had brought its hormone ban into compliance with the EC's WTO obligations."  The report does not express any view as to whether the Trade Representative believes that the EC is complying with the WTO settlement agreement, and the report does not allude to any "imminent resolution" of the dispute or mention the statutory exception.  Thus, the government has not pointed to any evidence from which we could conclude that the Trade Representative has determined that resolution of the hormone dispute is imminent.  In the absence of such evidence—and, more importantly, in the absence of any finding of fact on this question by the Court of International Trade—we cannot affirm the court's conclusion that the Trade Representative's inaction is excused by the statutory exception.

With respect to the Trade Representative's decision not to revise the retaliation list, the government also argues that the Trade Representative's actions or inactions are unreviewable.  That is because, in the government's view, Congress delegated unfettered discretion to the Trade Representative under the carousel provision and, in any event, there is no final agency action to review.  We agree that the Trade Representative's determinations under the carousel provision are entitled to substantial deference.  But that does not preclude review of whether the Trade Representative has

---

[3]  The pages of that report cited by the government in its brief, pages 235-36, have nothing to do with the hormone dispute or retaliation list.  We presume that the government intended to cite page 258, the only page of the document on which we find any relevant discussion of the hormone dispute.

actually made a determination required by the statute, or whether, instead, the Trade Representative has wholly ignored the statute's commands.

The carousel provision states that the Trade Representative "shall" review and revise the retaliation list every 180 days. Statutory instructions using the term "shall" are ordinarily treated as mandatory. See, e.g., Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 35 (1998) (noting that the use of the term "shall" in a statute "normally creates an obligation impervious to . . . discretion"); Escoe v. Zerbst, 295 U.S. 490, 493 (1935) (noting that the term "shall" in a statute is ordinarily "the language of command"). Nothing in the Trade Act of 2000 suggests otherwise. In fact, the legislative history of the Act suggests that Congress meant to require revision of the list, to ensure the list continued to exert maximum pressure on noncomplying nations. See, e.g., H.R. Rep. No. 106-606, at 119 (2000) (the purpose of the amendment is to "require the United States Trade Representative (USTR) to make periodic revisions of retaliation lists 120 days from the date the retaliation list is made and every 180 days thereafter").

While we express no opinion as to whether resolution of the hormone beef dispute is imminent—nor any opinion as to which goods should be included on the retaliation list—we see no basis in the record for concluding as a matter of law that the statutory exception is applicable. Thus, the Court of International Trade erred by holding the exception applicable on the government's motion to dismiss. We therefore remand for the court to further consider whether the Trade Representative has actually determined that resolution of the hormone dispute is imminent. If the Trade Representative demonstrates that the statutory exception applies, then, for the reasons

discussed below, there is no remedy available to Gilda in this suit. However, if the court finds that the Trade Representative has not determined that resolution of the hormone dispute is imminent, then the court should consider whether it is appropriate to direct the Trade Representative to review and revise the retaliation list.

3

Although the Trade Representative has not demonstrated compliance with the carousel provision, that does not entitle Gilda to all of the remedies it seeks. Any right to remedial action is limited by the scope of the statutory violation Gilda can prove. Gilda argues that if the Trade Representative failed to comply with the carousel provision, we should fashion a remedy that would put Gilda in the position it would be in if its imports had been removed from the retaliation list pursuant to some hypothetical revision that should have occurred in the past. That remedy, Gilda contends, would include removing Gilda's imports from the current retaliation list and refunding any retaliatory duties that Gilda has paid since that hypothetical revision.

The problem with that argument is that we cannot speculate as to whether the Trade Representative would have removed toasted breads from the retaliation list if the Trade Representative had revised the list pursuant to the carousel provision. That is because the Trade Representative has discretion under the carousel provision to review and revise the list "in whole or in part" so as to "affect other goods." 19 U.S.C. § 2416(b)(2)(C). In light of that broad discretionary authority, Gilda had no grounds on which to insist that toasted breads be removed from the list as part of the regular process. That is particularly so in light of the deference accorded by the court to the Executive Branch's exercise of discretion in the area of trade negotiations. See, e.g.,

Am. Ass'n of Exps. & Imps. v. United States, 751 F.2d 1239, 1247 (Fed. Cir. 1985); Maple Leaf Fish Co. v. United States, 762 F.2d 86, 89 (Fed. Cir. 1985). Under these circumstances, it would be improper for us to hold that toasted breads should have been removed from the retaliation list pursuant to the carousel provision at some point in the past. For that reason, Gilda is not entitled to a refund of duties paid or removal of its imported products from the retaliation list, no matter whether the Trade Representative has complied with the carousel provision.

In sum, the Trade Representative had the authority to include toasted breads on the original retaliation list, and there is no provision in the statute that required the Trade Representative to terminate the list or remove toasted breads from the list. Therefore, there is no legal basis on which we could compel the Trade Representative to remove Gilda's imports from the retaliation list, and no grounds on which we could hold that Gilda was improperly required to pay retaliatory duties. On remand, the only statutory violation that Gilda might be able to prove is the Trade Representative's failure to comply with the carousel provision. The only remedy that could be appropriate for that violation would be to direct the Trade Representative to take the action required by the carousel provision—i.e., to review and revise the retaliation list. On remand, if the court finds that the statutory exception does not apply in this case, then the court should consider whether that remedy is appropriate.

IV

Gilda next argues that the carousel provision gave it the right to notice and an opportunity to comment on the retaliation list every 180 days. We disagree. The Trade Representative satisfied the statute's procedural requirements by providing notice and

an opportunity to comment at the time the retaliation list was implemented. If the Trade Representative finds it necessary to revise the retaliation list, the statute instructs him to "consult with the petitioner, if any, involved in the initial investigation." The statute does not require the Trade Representative to provide notice or an opportunity for comment to all interested parties at that point. Moreover, in the event that the Trade Representative finds it unnecessary to revise the retaliation list, the statute does not demand recurring notice and comment periods every 180 days.

Nor is Gilda entitled to any greater rights under the Due Process Clause of the Fifth Amendment. It has long been settled that executive actions involving foreign trade, such as the imposition of tariffs, do not constitute the taking of property without due process of law, see Legal Tender Cases (Knox v. Lee), 79 U.S. (12 Wall.) 457, 551 (1870); Paradissiotis v. United States, 304 F.3d 1271, 1274-75 (Fed. Cir. 2002), and that "[n]o one has a legal right to the maintenance of an existing rate or duty," Norwegian Nitrogen Prods. Co. v. United States, 288 U.S. 294, 318 (1933). Thus, the retention of Gilda's imports on the retaliation list did not deprive Gilda of a property interest as to which it was entitled to additional procedural protections as a matter of constitutional due process.

V

Finally, Gilda argues that the Trade Representative has violated the recommendation made by the WTO's Dispute Settlement Body because that recommendation authorized the United States to suspend trade concessions for an amount up to $116.8 million per year. See Implementation of WTO Recommendations Concerning EC-Measures Concerning Meat and Meat Products (Hormones), 64 Fed.

Reg. 40,638, 40,639 (July 27, 1999). According to Gilda, Customs has collected retaliation duties in excess of that amount. Thus, in Gilda's view, Gilda is entitled to a refund corresponding to that excess amount. Gilda's original complaint did not make that allegation, and the Court of International Trade, without comment, denied Gilda's motion to amend its complaint with the allegation.

On appeal, Gilda does not address the court's denial of Gilda's motion to amend its complaint, but instead focuses on the substance of the excess duties argument. However, no matter whether the court should have allowed Gilda to amend its complaint, the substance of Gilda's excess duty argument is without merit, and therefore Gilda was not prejudiced by the court's order. As we have noted, "WTO decisions are 'not binding on the United States, much less this court.'" Corus Staal BV v. Dep't of Commerce, 395 F.3d 1343, 1348 (Fed. Cir. 2005) (quoting Timken Co. v. United States, 354 F.3d 1334, 1344 (Fed. Cir. 2004)). Moreover, 19 U.S.C. § 3512(c)(1)(B) provides that no person other than the United States "may challenge, in any action brought under any provision of law, any action or inaction by any department, agency, or other instrumentality of the United States . . . on the ground that such action or inaction is inconsistent with [the Uruguay Round Agreements]." The Uruguay Round Agreements encompass all agreements that might be implicated by the WTO Dispute Settlement Body's recommendation, see generally 19 U.S.C. §§ 3501(7), 3511(d), so Gilda may not challenge the retaliation list's implementation on the ground that it violates the WTO's recommendation.

Each party shall bear its own costs for this appeal.

<u>AFFIRMED IN PART, VACATED IN PART, AND REMANDED</u>.