**Slip Op. 08 – 72**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |
|---|---|
| THYSSENKRUPP ACCIAI SPECIALI TERNI S.P.A. and THYSSENKRUPP AST USA, INC., | |
| Plaintiffs, | Before: Richard W. Goldberg, Senior Judge |
| v. | Court No. 07-00390 |
| UNITED STATES, CARLOS M.GUTIERREZ, UNITED STATES DEPARTMENT OF COMMERCE, AMBASSADOR SUSAN C. SCHWAB, and OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, | |
| Defendants, | |
| and | |
| AK STEEL CORPORATION, and ALLEGHENY LUDLUM CORPORATION | |
| Defendant-Intervenors. | |

**OPINION**

[Defendants' partial motion to dismiss is denied.]

Dated: July 1, 2008

Hogan & Hartson, LLP (Lewis E. Leibowitz, Craig A. Lewis, Harold D. Kaplan, Jonathan T. Stoel, Theodore C. Weymouth) for Plaintiffs ThyssenKrupp Acciai Speciali Terni S.p.A and ThyssenKrupp AST USA, Inc.

Gregory G. Katsas, Acting Assistant Attorney General, Jeanne E. Davidson, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil

Division, U.S. Department of Justice, (Claudia Burke), for Defendants United States, Carlos M. Gutierrez, United States Department of Commerce, Ambassador Susan C. Schwab, and the Office of the United States Trade Representative. Office of Chief Counsel for Import Administration, U.S. Department of Commerce (Natasha Camille Robinson) for Defendant United States Department of Commerce.

Kelley Drye & Warren, LLP (Mary Tuck Staley, Daniel Philip Lessard, David Alan Hartquist) for Defendant-Intervenors AK Steel Corporation and Allegheny Ludlum Corporation.

**GOLDBERG, Senior Judge**: This matter is before the Court on the defendants' partial motion to dismiss two counts of a four-count complaint for lack of subject matter jurisdiction pursuant to USCIT Rule 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to USCIT Rule 12(b)(5). For the following reasons, the defendants' partial motion to dismiss is denied.

## I.   BACKGROUND

Plaintiff ThyssenKrupp Acciai Speciali Terni S.p.A. ("**ThyssenKrupp**") is the sole producer of stainless steel sheet and strip in coils ("**SSSS**") from Italy.[1] In 1998, the U.S. Department of Commerce ("**Commerce**") initiated an antidumping investigation of imports of SSSS from Italy, and ultimately calculated a weighted-average dumping margin of 11.23% for

---

[1] The other plaintiff in this action, ThyssenKrupp Acciai Speciali Terni AST USA, Inc., is ThyssenKrupp's U.S. reseller and is the sole importer of SSSS from Italy. Throughout this opinion, the term "ThyssenKrupp" will refer to both plaintiffs.

ThyssenKrupp.  See Stainless Steel Sheet and Strip in Coils from

Italy, 64 Fed. Reg. 40567, 40570 (Dep't Commerce July 27, 1999)

(final amended determination) ("**1999 Antidumping Order**").  To

make this determination, Commerce used a methodology commonly

referred to as "zeroing."[2]

In 2006, the WTO Dispute Settlement Body adopted a WTO

dispute resolution panel report that found Commerce's zeroing

methodology to be inconsistent with U.S. obligations under the

WTO agreements.  See Panel Report, United States – Laws,

Regulations and Methodology for Calculating Dumping Margins

(Zeroing), WT/DS294/R (Oct. 31, 2005).  The European Communities

had challenged the use of the zeroing methodology in fifteen of

Commerce's antidumping duty investigations.  After the WTO

---

[2] During the course of an antidumping duty investigation,
Commerce must determine whether the subject merchandise is being
sold at less than fair value.  Commerce normally employed an
"average-to-average methodology" to make this determination.
This methodology involves dividing the export transactions into
groups by model and level of trade ("averaging groups") and then
comparing the average export price of an averaging group to the
weighted-average of normal values of such sales.  Commerce then
aggregated the results of the averaging groups in order to
determine the weighted-average dumping margin.  However, when
aggregating the results, Commerce did not permit the results of
averaging groups for which the weighted-average export price
exceeded the normal value to offset the results of averaging
groups for which the weighted-average export price is less than
the weighted-average normal value. This method of average-to-
average comparisons without providing offsets is generally
referred to as "zeroing."  See generally Calculation of the
Weighted Average Dumping Margin During an Antidumping Duty
Investigation, 71 Fed. Reg. 11189 (Dep't Commerce Mar. 6, 2006)
(request for comments).

report was issued, Commerce abandoned the zeroing methodology in its antidumping investigations.  See Calculation of the Weighted-Average Dumping Margin During an Antidumping Investigation, 71 Fed. Reg. 77722 (Dep't Commerce Dec. 20, 2006) (final modification).

Commerce initiated a section 129 proceeding to implement the WTO findings in the antidumping investigations challenged by the European Communities.  Section 129 of the Uruguay Round Agreements Act (set forth in 19 U.S.C. § 3538) is the means by which final determinations resulting from antidumping investigations are modified to comply with WTO rulings.  After the WTO declares an action by Commerce to be inconsistent with U.S. obligations under the WTO agreements, the United States Trade Representative ("USTR") is required to consult with Commerce and congressional committees on the matter.  See 19 U.S.C. § 3538(b)(1) (2000).  Then, at the request of the USTR, Commerce must issue a determination ("**Section 129 determination**") that brings the challenged determination into compliance with the WTO ruling.  See id. § 3538(b)(2).  Once Commerce issues the Section 129 determination, the USTR may, after consulting with both Commerce and the congressional committees, direct Commerce to implement the determination in whole or in part.  See id. § 3538(b)(4).

In the present case, Commerce issued a Section 129 determination with respect to the 1999 Antidumping Order applicable to ThyssenKrupp's SSSS imports.  Abandoning the zeroing methodology, Commerce calculated a preliminary revised weighted-average margin for ThyssenKrupp of 2.11%.  A margin below 2% is de minimis and would warrant revocation of the order.  See 19 U.S.C. § 1673b(b)(3) (2000).  ThyssenKrupp challenged Commerce's preliminary calculation and alleged that Commerce made certain errors that inflated the dumping margin.  Commerce declined to make any changes to the Section 129 determination.  See Implementation of the Findings of the WTO Panel in US-Zeroing (EC); Antidumping Duty Order on Stainless Steel Sheet and Strips in Coils from Italy, 72 Fed. Reg. 54640, 54641-42 (Dep't Commerce Sept. 20, 2007) (final determination).  Subsequently, ThyssenKrupp commenced this action against Commerce, the Secretary of Commerce (the Honorable Carlos M. Gutierrez), the Office of the USTR, and the USTR (Ambassador Susan C. Schwab) (collectively, "**the government**").[3]

ThyssenKrupp's action consists of a four-count complaint challenging the Section 129 proceeding.  The first two counts directly challenge the substance of the Section 129

_____

[3] The Secretary of Commerce and the Department of Commerce will be collectively referred to as "Commerce."  Likewise, the United States Trade Representative and the Office of the United States Trade Representative will be collectively referred to as "USTR."

determination.  In Count 1, ThyssenKrupp alleges that Commerce erroneously transposed two numbers in one of its calculations, which inflated the ultimate margin calculation above the de minimis level.  In Count 2, ThyssenKrupp alleges that Commerce erred when, with respect to certain sales, it applied the net margin rate to gross unit prices instead of to net unit prices. As in Count 1, this error allegedly inflated the dumping margin above 2%.

In Count 3, ThyssenKrupp alleges that the USTR acted arbitrarily and capriciously and abused its discretion when it directed Commerce to implement a Section 129 determination that left errors (those described in Counts 1 and 2) uncorrected. Count 4 alleges that Commerce unlawfully refused to correct errors in the Section 129 Determination pursuant to 19 C.F.R. § 351.224.[4]

## II.  STANDARD OF REVIEW

The government requests that the Court dismiss Counts 3 and 4 of the Complaint for lack of subject matter jurisdiction pursuant to USCIT Rule 12(b)(1).  In this case, the plaintiffs have the burden of establishing jurisdiction.  See Cedars-Sinai

---

[4] Section 351.224 states in relevant part: "The Secretary [of Commerce] will analyze any comments received and, if appropriate, correct any significant ministerial error by amending the preliminary determination, or correct any ministerial error by amending the final determination or the final results of review . . . ."  19 C.F.R. § 351.224(e) (2007).

Med. Ctr. v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993).  The

Court "assumes all factual allegations to be true and draws all

reasonable inferences in plaintiff's favor."  See Mukand Int'l

Ltd. v. United States, 30 CIT __, __, 452 F. Supp. 2d 1329, 1331

(2006).  The government also moves to dismiss Counts 3 and 4 for

failure to state a claim upon which relief could be granted

pursuant to USCIT Rule 12(b)(5).  To avoid dismissal for failure

to state a claim, the "factual allegations must be enough to

raise a right to relief above the speculative level on the

assumption that all the allegations in the complaint are true

(even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 127 S.

Ct. 1955, 1965 (2007) (internal citations omitted).

### III.    DISCUSSION

**A. Motion to Dismiss for Lack of Jurisdiction**

**i.    *Statutory Jurisdiction Over Count 3 pursuant to §
1581(i)***

The parties agree that the Court has subject matter

jurisdiction over Counts 1 and 2 because a Section 129

determination is a "reviewable determination" listed in 19

U.S.C. § 1516a(a)(2)(B).  The Court has jurisdiction over any

civil action commenced under 19 U.S.C. § 1516a.  See 28 U.S.C. §

1581(c).  The parties disagree about the jurisdictional basis

for Counts 3 and 4.  ThyssenKrupp alleges jurisdiction under

either § 1581(c) or (i), whereas the government claims

ThyssenKrupp has failed to establish jurisdiction under either subsection.

Count 3 of ThyssenKrupp's complaint alleges a cause of action pursuant to the Administrative Procedures Act ("APA"). ThyssenKrupp claims that it has been "adversely affected or aggrieved by" USTR's decision to implement the Section 129 determination without correcting certain alleged errors made by Commerce. 5 U.S.C. § 702 (2000). When a plaintiff alleges an APA cause of action, the Court may have jurisdiction pursuant to 28 U.S.C. § 1581(i). See Motions Sys. Corp. v. Bush, 437 F.3d 1356, 1359 (Fed. Cir. 2006) (en banc) (per curiam). Section 1581(i) states that this Court has exclusive jurisdiction over:

> [A]ny civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—
>
> (1) revenue from imports or tonnage;
>
> (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
>
> (3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
>
> (4) administration and enforcement with respect to the matters referred to in paragraphs (1)—(3) of this subsection and subsections (a)—(h) of this section.

28 U.S.C. § 1581(i) (2000). Because ThyssenKrupp's APA cause of action challenges the administration and enforcement of the collection of import duties, it is "facially embraced" by

paragraphs (1) and (4) of § 1581(i).  Conoco, Inc. v. U.S. Foreign-Trade Zones Bd., 18 F.3d 1581, 1590 (Fed. Cir. 1994).

Although a claim may technically fall within the language of § 1581(i), it is well-established that jurisdiction is not appropriate under that subsection when "jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate."  Miller & Co. v. United States, 824 F.2d 961, 963 (Fed. Cir. 1987).  The government argues the Court lacks jurisdiction to entertain Counts 3 and 4 because "adequate relief is available through ThyssenKrupp's 28 U.S.C. [§] 1581(c) claims."  Defs.' Partial Mot. to Dismiss 8.

In support of its argument that § 1581(c) is both available and adequate, the government notes that all of ThyssenKrupp's claims essentially seek the same relief.  If Commerce corrects the alleged errors in the Section 129 determination, either as a result of a direct challenge to that determination (Counts 1 and 2) or to the administration and enforcement of the same (as in Count 3), ThyssenKrupp's dumping margin would be de minimis and the order would be revoked.  The government concludes that because ThyssenKrupp has invoked 1581(c) as the jurisdictional basis for the first two claims, then 1581(i) cannot be invoked for Count 3, which seeks the same remedy.  Allowing a litigant to allege an alternative jurisdictional basis for the same

remedy is tantamount to providing a "second bite at the apple" which, the government alleges, is not permissible under well-settled precedent.  Defs.' Partial Mot. to Dismiss 11.

For this proposition, the government relies on Consolidated Bearings Co. v. United States, 348 F.3d 997 (Fed. Cir. 2003). In that case, the plaintiff challenged liquidation instructions sent by Commerce to Customs that did not accurately reflect the results of the underlying final determination.  The Court of Appeals for the Federal Circuit ("**Federal Circuit**") held that subject matter jurisdiction pursuant to § 1581(i) was proper because the plaintiff was not challenging the final results of the administrative review.  If it were, then § 1581(c) jurisdiction would have been available.  The Federal Circuit stated:

> Commerce's liquidation instructions direct Customs to implement the final results of administrative reviews. Consequently, an action challenging Commerce's liquidation instructions is not a challenge to the final results, but a challenge to the "administration and enforcement" of those final results.

Consol. Bearings, 348 F.3d at 1002 (quoting 18 U.S.C. § 1581(i)(4)).  In the present case, the government argues that the opposite is true in ThyssenKrupp's Complaint:  ThyssenKrupp is challenging *both* the final Section 129 determination *and* the administration and enforcement of that determination.  Such a strategy is not permitted under the Court's § 1581(i)

jurisprudence.  See Corus Staal BV v. United States, 31 CIT __,

__, 493 F. Supp. 2d 1276, 1285 (2007) (holding that plaintiff

cannot challenge liquidation instructions under § 1581(i) when

it truly seeks to challenge the underlying determination).

By glossing over the "manifest inadequacy" requirement in

its analysis, the government has failed to grasp the unique

nature of ThyssenKrupp's Complaint.  In both Consolidated

Bearings and Corus Staal, the Court could decide whether §

1581(i) jurisdiction was appropriate because it was in a

position to determine the "manifest inadequacy" of any

alternative jurisdictional bases.  In the present case, the

question of whether the remedy available pursuant to § 1581(c)

is "manifestly inadequate" is still unsettled at this point in

the proceedings.  If Commerce has no authority to grant the

relief that ThyssenKrupp seeks in Counts 1 and 2, then the

remedy available under § 1581(c) would be manifestly inadequate.

Cf. Gilda Indus., Inc. v. United States, 446 F.3d 1271, 1276

(Fed. Cir. 2006) (holding that the remedy available under §

1581(a) was manifestly inadequate because Customs had no

authority to overturn or disregard a decision made by the USTR);

Conoco, 18 F.3d at 1587-90 (concluding that jurisdiction under §

1581(i) was appropriate because an action brought under §

1581(a) would be futile due to lack of Customs' authority to

overturn an action by another agency).

In its motion to dismiss, the government plainly admits that this exact issue is still unresolved:

> [T]he ultimate question posed by <u>all</u> of ThyssenKrupp's claims is whether Commerce, in a section 129 determination, may reconsider matters that have long been settled in the litigation of an investigation— matters that are entirely outside the scope of the section 129 determination itself (which, as the parties must agree, concerned only the issue of zeroing in investigations).

Defs.' Partial Mot. to Dismiss 11.  If Commerce does have discretion to address the alleged errors, then jurisdiction is available pursuant to § 1581(c), and Counts 3 and 4 should be dismissed inasmuch as they invoke § 1581(i) as their jurisdictional basis.[5]  On the other hand, if Commerce does not have the authority to consider matters that do not relate to zeroing, then it would be futile and therefore manifestly inadequate for ThyssenKrupp to pursue its claims under § 1516a and § 1581(c).  The Court would therefore have jurisdiction pursuant to § 1581(i) over ThyssenKrupp's APA cause of action.

To be clear, the Court construes Count 3 as an alternative cause of action to Counts 1 and 2.  If the Court ultimately decides that ThyssenKrupp should prevail on Counts 1 and 2, the remedy available would be adequate, and no jurisdiction would support Count 3.  In the same vein, if the Court determines that

---

[5] ThyssenKrupp alleged both § 1581(c) and § 1581(i) as potential jurisdictional bases for Count 4. As discussed below, the Court concludes that the Court has jurisdiction over Count 4 pursuant to § 1581(c).

Commerce had the authority to grant the relief sought in Counts 1 and 2, but acted within its discretion to refuse to do so, such relief would still be deemed adequate, and the Court would not have jurisdiction over Count 3.  See Miller, 824 F.2d at 964 (holding that an adverse decision under § 1581(c) does not render a remedy manifestly inadequate).  On the other hand, if Commerce had no discretion to correct the alleged errors, then the relief would be manifestly inadequate, and the Court would have jurisdiction over Count 3 pursuant to § 1581(i). It would be premature for the Court to grant Defendants' motion to dismiss without fully considering the merits of Counts 1 and 2.

### ii.  Statutory Jurisdiction Over Count 4

In Count 4, Commerce is alleged to have unlawfully refused to correct ministerial errors as required by 19 C.F.R. § 351.224.  Commerce's decision whether to correct ministerial errors under this regulation is subject to judicial review pursuant to § 1581(c).  See Alloy Piping Prods., Inc. v. United States, 334 F.3d 1284, 1292 (Fed. Cir. 2003).  The government does not provide any analysis challenging § 1581(c) as the Court's jurisdictional basis for Count 4 against Commerce.

In addition to the allegations against Commerce, Count 4 also includes a component that involves the USTR.  As the USTR's actions have already been challenged (with nearly identical

language) in Count 3 as an APA cause of action,[6] the Court does

not see how the USTR component of Count 4 affects its

jurisdictional basis.  The USTR component simply reiterates

ThyssenKrupp's argument that Commerce cannot use the USTR

implementation instructions as a valid defense for failing to

correct the alleged errors if those instructions were unlawful.

### iii. Standing to Challenge the USTR's Actions

The government argues that ThyssenKrupp lacks Article III

standing to challenge the USTR's actions.  To satisfy Article

III standing, ThyssenKrupp must show: (1) it has suffered an

actual injury, (2) such injury is fairly traceable to the

challenged action, and (3) such injury is likely to be redressed

by a favorable decision.  See Valley Forge Christian Coll. v.

Ams. United for Separation of Church and State, Inc., 454 U.S.

464, 472 (1982).  ThyssenKrupp has demonstrated that it has

suffered an injury (a higher dumping margin) that can be fairly

---

[6] In Count 4, ThyssenKrupp makes an allegation against the USTR
that is practically identical to the allegation in Count 3.
Compare Compl. ¶ 53 ("Defendant USTR's and Defendant Ambassador
Schwab's direction to the Department to implement, in accordance
with 19 U.S.C. § 3538(b)(4), the unlawful *Section 129 Final
Determination* without correcting the mathematical errors
described in this Complaint, was 'arbitrary, capricious, an
abuse of discretion . . . .' 5 U.S.C. § 706(2)."), with Compl. ¶
58 ("Defendant USTR's and Defendant Ambassador Schwab's
direction to the Department, to the extent that USTR directed
the Department to implement, in accordance with 19 U.S.C. §
3538(b)(4), the unlawful *Section 129 Final Determination* without
correcting the ministerial errors described herein, was
'arbitrary, capricious, an abuse of discretion . . . .' 5 U.S.C.
§ 706(2).").

traced to the challenged action (implementation of an allegedly unlawful Section 129 determination). The government, however, claims that ThyssenKrupp's injury is not likely to be redressed by a favorable decision of the Court. The government characterizes ThyssenKrupp's Complaint as seeking, among other things, a finding that USTR lacked authority to direct Commerce to implement an unlawful Section 129 determination. If the Court does make such a finding, ThyssenKrupp would simply be placed in the position it was in before the implementation of the Section 129 determination (i.e., subject to an 11.23% dumping margin). Hence, a favorable decision by this Court would not redress ThyssenKrupp's injury.

The government misapprehends the relief set forth in the Complaint. ThyssenKrupp does not simply ask the Court for a finding that the USTR lacked authority to direct Commerce to implement the Section 129 determination. Instead, ThyssenKrupp asks the Court to "[d]eclare contrary to law USTR's direction to [Commerce] to adopt and publish Commerce's unlawful *Section 129 Final Determination* to the extent that USTR directed [Commerce] to implement, in accordance with 19 U.S.C. § 3538(b)(4), the unlawful *Section 129 Final Determination* without correcting the errors described in this Complaint." Compl. ¶ 59(b). If the USTR's implementation instructions were unlawful, or if the USTR never limited Commerce's authority to correct errors, then this

Court could remand the issue back to Commerce for further review.  Providing such an opportunity for review would sufficiently redress ThyssenKrupp's injury and satisfy Article III standing.  See Gilda, 446 F.3d at 1279 (holding that deprivation of opportunity for agency to exercise discretionary review is sufficient injury to satisfy Article III standing).

Next, the government argues that ThyssenKrupp lacks prudential standing under the APA because ThyssenKrupp is not with the "zone of interest" of Section 129.  A plaintiff satisfies the "zone of interest" test if "the interest sought to be protected by the [plaintiff] is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question."  Ass'n of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 153 (1970).  The Supreme Court has explained that this "zone of interest" test "is not meant to be especially demanding," and, "[i]n cases where the plaintiff is not itself the subject of the contested regulatory action," the test is satisfied unless "the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit."  Clarke v. Sec. Indus. Ass'n, 479 U.S. 388, 399 (1987).

This exact issue has already been addressed in Tembec, Inc. v. United States, 30 CIT __, __, 441 F. Supp. 2d 1302 (2006) ("**Tembec I**").[7]  The Tembec I court noted that Section 129 explicitly provided interested parties (such as ThyssenKrupp) several procedural rights throughout the Section 129 proceeding. The courts are to consider the "overall context" of the relevant statutory framework in deciding which interests are arguably protected.  Clarke, 479 U.S. at 401.  The Tembec I court held that "[t]he procedural interest of participating in the section 129 process cannot be divorced from the substantive interest such participation arguably protects—ensuring that new section 129 determinations are implemented in accordance with U.S. law." Tembec I, 30 CIT at __, 441 F. Supp. 2d at 1324.  As such, the court concluded that foreign governments and producers are within the zone of interests protected by Section 129.  Id.  The

---

[7] The government implores the Court to disregard Tembec I because its judgment was later vacated.  In Tembec I, the Court held that it could exercise jurisdiction over a challenge to the USTR's authority to direct implementation of a Section 129 determination.  Subsequently, the court issued Tembec, Inc. v. United States, 30 CIT __, 461 F. Supp. 2d 1355 (2006) ("**Tembec II**"), which decided the case on the merits.  The court later vacated the judgment in Tembec II but explicitly refused to withdraw the decision.  See Tembec, Inc. v. United States, 31 CIT __, 475 F. Supp. 2d 1393, 1402 (2007) ("**Tembec III**").  The decision concerning jurisdiction in Tembec I was not withdrawn by the Tembec III court.  Although the judgment resulting from Tembec II was eventually vacated due to settlement, there is no reason Tembec I should not be treated as persuasive authority. See, e.g., Samsung Elecs. Am., Inc. v. United States, 195 F.3d 1367, 1371 (Fed. Cir. 1999) (citing a vacated decision as persuasive legal authority, despite its vacatur for mootness).

Court is persuaded by the reasoning of Tembec I, and finds that

ThyssenKrupp, a foreign producer and interested party, has

standing under the "zone of interest" test.

**B. Motion to Dismiss for Failure to State a Claim**

   ***i.   Failure to State A Claim Against the USTR***

The government argues, in the alternative, that

ThyssenKrupp's APA cause of action against the USTR fails to

state a claim upon which relief can be granted.  The APA grants

a right of review to "[a] person suffering legal wrong because

of agency action, or adversely affected or aggrieved by agency

action . . . ." 5 U.S.C. § 702 (2000).  This right of review is

not available if judicial review is precluded by another

statute.  See id. § 701(a).  There is a general presumption in

favor of judicial review that can be overcome by congressional

intent to preclude that is "fairly discernable" from the

legislative scheme.  See Block v. Cmty. Nutrition Inst., 467

U.S. 340, 351 (1984).  The Supreme Court has stated that

"[w]hether and to what extent a particular statute precludes

judicial review is determined not only from its express

language, but also from the structure of the statutory scheme,

its objectives, its legislative history, and the nature of the

administrative action involved."  Id. at 345.  The government

essentially argues that the express language and the statutory

scheme of Section 129 preclude any APA cause of action against the USTR.

The government frames ThyssenKrupp's allegations as an attempt to challenge an "unimplemented" Section 129 determination. "Section 129 determinations that are not implemented will not be subject to judicial or binational panel review, because such determinations will not have any affect under domestic law." Statement of Administrative Action, Uruguay Round Agreements Act, accompanying H.R. Doc. No. 103-316, 656, 1026 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4314. ThyssenKrupp is not attempting to challenge an unimplemented Section 129 determination. In fact, the present action was filed after the final Section 129 determination at issue was implemented by Commerce, and in Counts 1 and 2, ThyssenKrupp directly challenges that determination pursuant to 19 U.S.C. § 1516a. As noted above, the government admits that in defense of Counts 1 and 2, it intends to claim that Commerce had no discretion to correct ministerial errors in Section 129 determinations. ThyssenKrupp alleges that Commerce's authority to correct such errors was expressly limited by the USTR's unlawful implementation instructions. If this allegation is true, then ThyssenKrupp has a cause of action under the APA to challenge the USTR's implementation instructions, which may have been unlawful.

The crux of the government's argument in favor of preclusion is that the events leading to final implementation of a Section 129 determination are insulated from judicial review because they are "political in nature."  Defs.' Partial Mot. to Dismiss 15.  In NSK Ltd. v. United States, upon which the government heavily relies, the plaintiffs challenged Commerce's zeroing methodology in light of the recent WTO ruling that found zeroing to be inconsistent with U.S. international obligations. See 510 F.3d 1375, 1379 (Fed. Cir. 2007).  Although Commerce had expressed its intent to comply with this ruling in the future, the WTO decision had not yet been implemented under section 129. The Federal Circuit declined to consider the WTO decision because it had not yet been "'adopted pursuant to the specified statutory scheme.'"  Id. (quoting Corus Staal BV v. Dep't of Commerce, 395 F.3d 1343, 1349 (Fed. Cir. 2005)).  NSK Ltd. is inapposite because in the present case, ThyssenKrupp is not asking the Court to consider an unimplemented WTO decision, nor is it challenging any aspects of the zeroing issue. ThyssenKrupp did not interrupt the political process; in fact, it filed this action after the final Section 129 determination was implemented.  The government fails to demonstrate how a refusal to correct ministerial errors is "political in nature" and therefore unreviewable.

In Gilda v. United States, the government attempted to persuade the Federal Circuit that with respect to the USTR's decision not to revise a retaliation list pursuant to 19 U.S.C. § 2416, the USTR's "actions or inactions are unreviewable." 446 F.3d at 1282. The Federal Circuit disagreed, and stated that while such decisions are entitled to substantial deference, "that does not preclude review of whether the Trade Representative has actually made a determination required by the statute, or whether, instead, the Trade Representative has wholly ignored the statute's commands." Id. In the present case, it is far from clear that the USTR complied with section 129 when it allegedly instructed Commerce not to correct certain errors in the final determination. If the Court determines that it has jurisdiction over Count 3, the question of whether the USTR acted within its substantial discretion will be decided later in the proceeding. The government's motion to dismiss Count 3 for failure to state a claim against the USTR is denied.

### ii. Failure to State a Claim Against Commerce

In a single paragraph on the last page of its motion to dismiss, the government makes the sweeping claim that no cause of action exists against Commerce in Count 4 because Commerce has no discretion to decline to implement the Section 129 Determination once USTR directs it to do so. This argument seems to misconstrue the nature of ThyssenKrupp's claim. It

appears that Commerce must implement a Section 129 determination when directed to do so, see 19 U.S.C. § 3538(b)(4), but the government has failed to demonstrate that Commerce lacks authority to correct ministerial errors in that determination. The extent of Commerce's discretion to correct the alleged errors, and how such discretion may have been limited by the USTR's implementation instructions, is the primary issue in this matter.  At this stage of the litigation, the government has failed to show that ThyssenKrupp has failed to state a claim upon which relief can be granted.

## IV.  CONCLUSION

In light of the foregoing, the government's partial motion to dismiss is denied.  A separate order will be issued accordingly.


                                        **/s/ Richard W. Goldberg**
                                        **Richard W. Goldberg**
                                        **Senior Judge**

**Date:      July 1, 2008**
            **New York, New York**