**Slip Op. 09-19**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |
|---|---|
| THYSSENKRUPP ACCIAI SPECIALI, TERNI S.P.A., AND THYSSENKRUPP AST USA, INC., | |
| Plaintiffs, | Before: Richard W. Goldberg, Senior Judge |
| v. | Court No. 07-00390 |
| UNITED STATES, | |
| Defendant, and | |
| AK STEEL CORP., AND ALLEGHENY LUDLUM CORP., | |
| Defendant-Intervenors. | |

**OPINION**

[Commerce's section 129 determination is sustained.]

Date:  March 23, 2009

Hogan & Hartson, LLP (Lewis E. Leibowitz, Brian S. Janovitz, Craig A. Lewis, Harold D. Kaplan, Jonathan T. Stoel, Theodore C. Weymouth) for Plaintiff ThyssenKrupp Acciai Speciali Terni S.p.A., and ThyssenKrupp AST USA, Inc.

Michael F. Hertz, Deputy Assistant Attorney General, Jeanne E. Davidson, Director, U.S. Department of Justice, Civil Division, U.S. Department of Justice, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, (Claudia Burke), for Defendants United States, Otto J. Wolff, United States Department of Commerce, Ambassador Ron Kirk, and the Office of the United States Trade Representative.  Office of the Chief Counsel for Import Administration, U.S. Department of Commerce (Natasha Camille Robinson) for Defendant United States Department of Commerce.

Kelley Drye & Warren, LLP (Mary T. Staley, Daniel P. Lessard, David A. Hartquist) for Defendant-Interveners AK Steel Corporation, and Allegheny Ludlum Corporation.

**GOLDBERG, Senior Judge**: This case is before the Court on plaintiff's motion for judgment on the agency record.[1] For the following reasons, plaintiffs ThyssenKrupp Acciai Speciali Terni S.p.A. and ThyssenKrupp AST, USA, Inc.'s (collectively **"ThyssenKrupp"**) motion is denied, and the U.S. Department of Commerce's ("**Commerce**") final determination is sustained.

## I.    BACKGROUND

ThyssenKrupp's argument centers on whether Commerce can now correct two alleged mistakes in its 1999 less-than-fair-value investigation of Italian stainless steel sheet and strip coils ("**SSSS**"). To understand the procedural background of this case, three events are relevant: (1) Commerce's 1999 investigation; (2) the subsequent proceedings before the WTO; and (3) the current section 129 determination.

---

[1] This was originally styled as a motion for judgment on the agency record, or in the alternative, a motion for summary judgment. As the Court finds that Commerce's interpretation of its authority under section 129 is reasonable, counts one and two of ThyssenKrupp's complaint are moot. As counts three and four of ThyssenKrupp's complaint arise under § 1581(i), the scope of this action is limited to the agency record. See Defenders of Wildlife v. Hogarth, 25 CIT 1309, __, 177 F. Supp. 2d 1336, 1343 (2001). For a more full discussion of the jurisdictional issues raised in this case, see ThyssenKrupp Acciai Speciali Terni S.P.A. v. United States, 32 CIT __, 572 F. Supp. 2d 1323 (2008).

A.   The 1999 Investigation

In its 1999 investigation, Commerce applied adverse facts available to calculate the antidumping duty margin applicable to Italian SSSS.  Final Determination of Sales at Less than Fair Value:  Stainless Steel Sheet and Strip in Coils from Italy, 64 Fed. Reg. 30,750, 30,757 (Dep't Commerce June 8, 1999).  Using an "average-to-average" methodology to compare U.S. and Italian SSSS prices, Commerce set this margin at 11.17%.  Memorandum from Lesley Stagliano, Case Analyst, To File, Analysis of Acciai Terni S.p.A. for the Final Determination in the Antidumping Investigation of Stainless Steel Sheet and Strip in Coils from Italy for the Period April 1, 1996 – March 31, 1998 (May 19, 1999).  Shortly after setting this margin, ThyssenKrupp notified Commerce of the company's belief that this calculation contained several "ministerial" or "computational" errors.  In an amended final determination, Commerce set a revised dumping margin of 11.23%, but did not correct or address the errors alleged by ThyssenKrupp.  Amended Final Determination of Sales at Less Than Fair Value:  Stainless Steel Sheet and Strip in Coils from Italy, 64 Fed. Reg. 40,567, 40,570 (Dep't Commerce July 27, 1999).

ThyssenKrupp then appealed Commerce's amended final determination.  Although the Court affirmed Commerce's overall application of adverse facts available, it remanded for

consideration of the alleged errors.  Acciai Speciali Terni
S.P.A. v. United States, 25 CIT 245, 142 F. Supp. 2d 969 (2001).
Before Commerce could address these errors, this case was
dismissed without prejudice at the request of the parties.

  B.  Proceedings before the World Trade Organization

     Commerce's original antidumping duty investigation of
Italian SSSS relied on "zeroing" methodology.[2]  In 2004, the
European Community ("EC") requested the formation of a WTO panel
to address the validity of this methodology.  Request for the
Establishment of a Panel by the European Communities, United
States – Laws, Regulations and Methodology for Calculating
Dumping Margins ("Zeroing"), WT/DS294/7/Rev.1 at 1, 11 (Feb. 19,
2004).  Upon completing its investigation, the WTO panel found
zeroing inconsistent with U.S. obligations under various WTO

---

[2] Zeroing refers to a methodology formerly applied by Commerce in
antidumping investigations.  In antidumping investigations,
Commerce is required to determine whether a product is being
sold at less than fair value.  Typically, Commerce employs an
"average-to-average" comparison; rather, it divides export
transactions into groups by model and level of trade ("averaging
groups") and then compares the average export price of the
averaging group to the weighted-average of the sales of the
particular model at issue.  Commerce then aggregates the results
of the averaging groups and determines the weighted-average
margin.  The problems arose in that Commerce did not allow the
results of those averaging groups which exceeded the weighted-
average margin to "offset" the results of those below the
weighted-average margin.  This practice of not allowing offsets
was generally referred to as "zeroing."  See generally
Calculation of the Weighted Average Dumping Margin During an
Antidumping Duty Investigation, 71 Fed. Reg. 11189 (Dep't
Commerce Mar. 6, 2006) (request for comments).

agreements.  Panel Report, United States-Laws, Regulations and Methodology for Calculating Dumping Margins (Zeroing), WT/DS294/R (Oct. 31, 2005).  Subsequently, Commerce abandoned zeroing.  See Calculation of the Weighted-Average Dumping Margin During an Antidumping Investigation, 71 Fed. Reg. 77722 (Dep't Commerce Dec. 20, 2006) (final modification).

  C.   The Section 129 Proceeding

    To implement the decision of the WTO panel, Commerce initiated a section 129 proceeding.  Section 129 of the Uruguay Round Agreements Act (as set forth in 19 U.S.C. § 3538) is the mechanism through which determinations found inconsistent with the U.S.'s WTO obligations are brought into compliance.  Under section 129, the United States Trade Representative ("**USTR**") is first required to consult with Commerce and various congressional committees to determine their response.  See 19 U.S.C. § 3538(b)(1) (2000).  After this consultation, the USTR may request that Commerce issue a determination (a "**Section 129 determination**") to bring the challenged determination into compliance with U.S. obligations.  Id. § 3538(b)(2).

    Here, Commerce issued a section 129 determination related to the antidumping duty order on Italian SSSS.  After abandoning zeroing, Commerce determined that the new margin applicable to Italian SSSS was 2.11%.  A margin below 2% is de minimis and would merit revocation of the antidumping duty order.  See 19

U.S.C. § 1673b(b)(3) (2000).  Subsequently, ThyssenKrupp commenced this action against Commerce, the Secretary of Commerce (the Honorable Carlos M. Gutierrez) the Office of the USTR, and the USTR (Ambassador Susan C. Schwab).  Specifically, ThyssenKrupp objects to Commerce's refusal to reexamine the alleged errors committed during the original 1999 investigation in its current section 129 determination.  Each error, if accurate and corrected, would bring the dumping margin below the 2% de minimis threshold and would merit revocation of the antidumping duty order.

## II.   JURISDICTION & STANDARD OF REVIEW

The Court has jurisdiction pursuant to both 28 U.S.C. § 1581(c) and 28 U.S.C. § 1581(i).  The Court will uphold an agency's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(1)(2000).  In reviewing ThyssenKrupp's challenge to Commerce's construction of a statute, the Court applies the two-step analytical framework laid out in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837 (1984).  Step one requires the Court to determine whether Congress has spoken clearly to the issue at hand.  Id. at 842-43.  If the intent of Congress is clear, the Court's inquiry concludes and this express intent governs.  Id. However, if Congress's intentions are unclear, the agency is

given the discretion to interpret the statute as "statutory interpretations articulated by Commerce during its antidumping proceedings are entitled to judicial deference under Chevron." Pesquera Mares Australes Ltda. v. United States, 266 F.3d 1372, 1382 (Fed. Cir. 1992). If Chevron deference applies, the Court cannot substitute "its own construction of a statutory provision for a reasonable interpretation made by [Commerce]." IPSCO, Inc. v. United States, 965 F.2d 1056, 1061 (Fed. Cir. 1992). In reviewing ThyssenKrupp's challenge to the decisions of both Commerce and the USTR, the Court reviews these determinations to address whether they are "not in accordance with law . . . [or] in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(A); 28 U.S.C. § 2640(e).

## III. DISCUSSION

ThyssenKrupp raises two arguments: (1) that Commerce's refusal to correct the alleged errors violates the agency's statutory mandate; and (2) in the alternative, if the USTR's instructions led to Commerce's refusal to address these errors, these instructions violate U.S. antidumping law. These arguments are addressed in turn.

### A. Commerce's Section 129 Proceeding

ThyssenKrupp's first argument is that Commerce's calculation of the margin applicable to Italian SSSS is arbitrary and capricious and unsupported by substantial

evidence.  ThyssenKrupp argues that Commerce is required to correct the alleged errors as part of its greater obligation to reconcile adverse WTO mandates with domestic trade law.  In ThyssenKrupp's view, a section 129 determination is a "'new', 'second', and 'different' determination[]" meriting individualized attention to ensure that the newly selected margin corresponds with the relevant requirements of antidumping duty law — including the obligation to calculate margins "as accurately as possible" and to correct "any ministerial error by amending the final determination."  See Implementation of the Findings of the WTO Panel in US—Zeroing (EC):  Notice of Determinations Under Section 129 of the Uruguay Round Agreements Act and Revocations and Partial Revocations of Certain Antidumping Duty Orders, 72 Fed. Reg. 25, 261 (Dep't Commerce May 4, 2007) (quoting Statement of Administrative Action, URAA, H. Doc. 316, Vol. 1, 103rd Cong. (1994); Rhone Poulenc v. United States, 899 F.2d 1185, 1191 (Fed. Cir. 1990); 19 U.S.C. § 1673(d).  Commerce, however, advances a narrower view of its authority concluding that section 129 determinations are limited to the specific issue found inconsistent with the U.S.'s WTO obligations (in this case, zeroing).  For the reasons that follow, this Court affirms Commerce's reasonable interpretation of section 129.

### i. The Scope of Section 129 is Ambiguous

As an initial matter, the Court agrees with Commerce that the intended scope of section 129 is ambiguous. Section 129 provides only that "Commerce shall, within 180 days after the receipt of a written request from the Trade Representative, issue a determination in connection with the particular proceeding that would render the administering authority's action described in paragraph (1) not inconsistent with the findings of the panel or the Appellate Body." 19 U.S.C. § 3538(b)(2). It is unclear whether Congress intended to limit the scope of section 129 to include only issues found to violate the WTO agreements or to more broadly include other potential issues related to the contested determination. ThyssenKrupp repeatedly stresses Commerce's authority to reopen the record and to conduct new investigations as unambiguously conferring upon Commerce the discretion to address issues wholly unrelated to the relevant WTO proceedings. See, e.g., Mem. From Stephen J. Claeys, Deputy Ass't Sec'y AD/CVD Operations, to David M. Spooner, Ass't Sec'y for Import Admin., Section 129 Determination: Final Results of Sunset Review, Oil Country Tubular Goods from Mexico, at 2 (Dep't Commerce Apr. 26, 2007). However, this authority fails to provide any additional clarity. In many instances, Commerce could potentially need to reopen the administrative record or conduct a new investigation to resolve

issues which had been directly before a WTO panel or the Appellate Body.  Accordingly, the Court finds that the intended scope language of section 129 provides "precisely the type of ambiguity which an administrative agency, like Commerce, is given deference under Chevron step one to reasonably interpret." Hynix Semiconductor, Inc. v. United States, 29 CIT 995, 1003, 391 F. Supp. 2d 1337, 1345 (2006).

### ii. Commerce's Interpretation is Reasonable

As the intended scope of section 129 is ambiguous, the remaining question for this Court is "whether Commerce's construction of the statute is permissible."  Windmill Int'l Pte. v. United States, 26 CIT 221, 223, 193 F. Supp. 2d 1303, 1306 (2002).  This is an inquiry into the reasonableness of Commerce's interpretation.  See Fujitsu Gen. Ltd. v. United States, 88 F.3d 1034, 1038 (Fed. Cir. 1996). If Commerce's interpretation is reasonable, the Court cannot substitute its judgment for that of the agency under Chevron step two.  See Koyo Seiko Co. v. United States, 36 F.3d 1565, 1570 (Fed. Cir. 1994).  To determine the reasonableness of Commerce's interpretation, the Court must look at "the express terms of the provisions at issue, the objectives of those provisions, and the objectives of the antidumping scheme as a whole."  Globe Metallurgical, Inc. v. United States, 28 CIT 1608, 350 F. Supp. 2d 1148, 1152 (2004).

First, the Court considers the express language of section 129. Again, section 129 only requires that Commerce "issue a determination in connection with the particular proceeding that would render the administering authority's action . . . not inconsistent with the findings of the panel or the Appellate Body." 19 U.S.C § 3538(b)(2). This plain language does not require Commerce to address issues which were not presented to a WTO panel or the Appellate Body. While correcting the alleged errors would also arguably have been consistent with the statutory language, section 129 does not direct Commerce to correct any and all errors in determining how to comply with an adverse WTO decision.

Next, the Court considers the overarching goal of section 129 and whether Commerce's interpretation is reasonably tied to the vision behind its drafting. Overall, Section 129 provides a procedural mechanism for aligning inconsistent determinations with the provisions of the WTO agreements, and envisions an extensive consultative process. From this framework alone, it is not evident how allowing Commerce to expand the scope of section 129 determinations to unlitigated issues would relate to this goal or fit within this process. Moreover, the goal of this statute does not call Commerce's limited interpretation of

its own authority into question.[3]  As such, the Court affirms

Commerce's reasonable interpretation of section 129.[4]  Further,

as the scope of Commerce's review under section 129 is limited,

its application to this case relates only to the issue presented

before to the WTO, or zeroing.  ThyssenKrupp has raised no

objections regarding Commerce's treatment of zeroing in this

section 129 determination.  Therefore, Commerce's determination

is also supported by substantial evidence.

**B.  The Statutory Authority of the USTR**

ThyssenKrupp, in the alternative, argues that the USTR's

directions ordering Commerce to implement a section 129

determination were not in accordance with law to the extent that

the orders prevented Commerce from correcting the alleged

errors.  This argument lacks merit.  The USTR instructed

---

[3] An examination of Commerce's interpretation within the entire antidumping duty scheme also does not make its limited interpretation unreasonable.  ThyssenKrupp, however, argues that the overarching goal of accuracy requires Commerce to address all alleged errors.  Commerce points to finality concerns within the antidumping scheme and argues the Court should focus on this aspect of the antidumping duty scheme.  Neither goal, however, substantially outweighs the opposing principle, nor renders Commerce's limited interpretation of section 129 indicates unreasonable within the antidumping duty scheme.

[4] The Court also finds no evidence that Commerce took an inconsistent position in determining whether it had the authority to address the alleged errors.  Commerce's first decision memorandum explains that it required additional time to determine whether it had this authority, not as ThyssenKrupp alleges, to actually address the alleged errors.

Commerce to adjust its prior determination to comply with the adverse WTO determination.  In short, USTR took only those specific actions which were required under their statutory mandate.  See 19 U.S.C. § 3538(b)(4).  Here, the WTO proceedings were limited to the zeroing issue, and the alleged errors currently raised by ThyssenKrupp were not before the WTO panel or Appellate Body.  As discussed above, section 129 does not allow the USTR or Commerce to go outside this area in adjusting its prior determination.  Accordingly, the USTR's instructions were in accordance with law and did not violate their statutory mandate.

## IV.  CONCLUSION

For the foregoing reasons, the Court sustains the final results of Commerce's section 129 determination.  Judgment will be entered accordingly.


                                                       /s/ Richard W. Goldberg
                                                       **Richard W. Goldberg**
                                                       **Senior Judge**

**Date:     March 23, 2009**
**          New York, New York**