# United States Court of Appeals for the Federal Circuit

2009-1363

THYSSENKRUPP ACCIAI SPECIALI TERNI S.P.A.
and THYSSENKRUPP AST USA, INC.,

Plaintiffs-Appellants,

v.

UNITED STATES,
Gary Locke, SECRETARY OF COMMERCE,
UNITED STATES DEPARTMENT OF COMMERCE,
Ron Kirk, AMBASSADOR and UNITED STATES TRADE REPRESENTATIVE,
and THE OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE,

Defendants-Appellees,

and

AK STEEL CORP.,

Defendant,

and

ALLEGHENY LUDLUM CORPORATION,

Defendant-Appellee.

Lorane F. Hebert, Hogan & Hartson LLP, of Washington, DC, argued for plaintiffs-appellants.  With her on the brief were Lewis E. Leibowitz, T. Clark Weymouth, Craig A. Lewis, Jonathan T. Stoel, and Brian S. Janovitz.

Claudia Burke, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendants-appellees United States, et al.  With her on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director.

Mary T. Staley, Kelley Drye & Warren LLP, of Washington, DC, argued for defendant-appellee Allegheny Ludlum Corporation.  With her on the brief were David A. Hartquist and Daniel P. Lessard.

Appealed from:  United States Court of International Trade

Senior Judge Richard W. Goldberg

# United States Court of Appeals for the Federal Circuit

2009-1363

THYSSENKRUPP ACCIAI SPECIALI TERNI S.P.A.
and THYSSENKRUPP AST USA, INC.,

Plaintiffs-Appellants,

v.

UNITED STATES,
Gary Locke, SECRETARY OF COMMERCE,
UNITED STATES DEPARTMENT OF COMMERCE,
Ron Kirk, AMBASSADOR and UNITED STATES TRADE REPRESENTATIVE,
and THE OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE,

Defendants-Appellees.

and

AK STEEL CORP.,

Defendant,

and

ALLEGHENY LUDLUM CORPORATION,

Defendant-Appellee.

Appeal from the United States Court of International Trade in Case No. 07-00390, Senior Judge Richard W. Goldberg.

_____

DECIDED: April 23, 2010

_____

Before LOURIE, GAJARSA, and MOORE, Circuit Judges.

LOURIE, Circuit Judge.

ThyssenKrupp Acciai Speciali Terni SpA and ThyssenKrupp AST USA, Inc. (collectively "ThyssenKrupp") appeal from the decision of the United States Court of International Trade holding that the Department of Commerce ("Commerce") reasonably interpreted section 129 of the Uruguay Round Agreement Act ("URAA") when it declined to correct an alleged clerical error in the original investigation that was not raised in the World Trade Organization dispute settlement proceeding. See ThyssenKrupp Acciai Speciali, Terni S.P.A. v. United States, 602 F. Supp. 2d 1362 (Ct. Int'l Trade 2009) ("ThyssenKrupp") (upholding Commerce's determination in Implementation of the Findings of the WTO Panel in US—Zeroing (EC), 72 Fed. Reg. 25,261 (Dep't Commerce May 4, 2007) and accompanying Issues and Decision Mem. (Aug. 20, 2007) ("Section 129 Determination")). Because the court properly sustained Commerce's reasonable interpretation of the statute, we affirm.

## BACKGROUND

Three adjudicative processes are relevant to this case: (A) Commerce's original antidumping determination against ThyssenKrupp, including inter alia, its challenge before the Court of International Trade and subsequent stipulated-to dismissal; (B) the successful challenge before the dispute settlement body of the World Trade Organization ("WTO") to the U.S. practice of "zeroing" in antidumping determinations; and (C) Commerce's implementation of the WTO determination pursuant to 19 U.S.C. § 3538 ("section 129") and ThyssenKrupp's challenge to that determination, which is now before this court. We take them in turn.

A. Commerce's Original Antidumping Determination and Proceedings in the Court of International Trade

Under the antidumping statute, Commerce imposes antidumping duties on imported merchandise that "is being, or is likely to be, sold in the United States at less than its fair value" and that harms domestic industry. 19 U.S.C. § 1673. Sales at less than fair value are those where the "normal value" (the price a producer charges in its home market) exceeds the "export price" (the price of the product in the United States). 19 U.S.C. § 1677(35)(B). One methodology for determining the appropriate dumping margin is "average-to-average" comparison of normal value and export price, according to which Commerce divides the products under investigation into groups (based on model and level of trade) and calculates the average export price and average normal value of each group. 19 C.F.R. § 351.414(c)(1). The dumping margin for each group is calculated as the amount by which the weighted-average normal value exceeds the weighted-average export price. The dumping margins for the groups are then aggregated to calculate an overall weighted-average dumping margin for the transactions being investigated. See 19 U.S.C. § 1677(35)(B).

In the context of average-to-average comparisons, "zeroing" consists of aggregating dumping margins greater than zero, while treating "negative" dumping margins (groups for which the weighted-average export price exceeded the weighted average normal value) as if they were zero. Commerce's "zeroing" methodology has been challenged at various times and upheld as a reasonable construction of the URAA by the Court of International Trade, Serampore Indus. Pvt. Ltd. v. U.S. Dep't of Commerce, 675 F. Supp. 1354, 1360-61 (Ct. Int'l Trade 1987); Bowe Passat Reinigungs-Und Waschereitechnik GmbH v. United States, 926 F. Supp. 1138, 1150

(Ct. Int'l Trade 1996)), and by this court, <u>Timken Co. v. United States</u>, 354 F.3d 1334, 1342 (Fed. Cir.), <u>cert. denied</u> 543 U.S. 976 (2004); <u>Corus Staal BV v. Dep't of Commerce</u>, 395 F.3d 1343 (Fed. Cir. 2005), <u>cert. denied</u> 546 U.S. 1089 (2006); <u>Corus Staal BV v. United States</u>, 502 F.3d 1370 (Fed. Cir. 2007).

In July 1999, Commerce issued an amended final determination in its antidumping duty investigation of stainless steel sheet and strip in coils ("SSSS") from Italy, finding that ThyssenKrupp was dumping at a margin of 11.23%. <u>Amended Final Determination of Sales at Less than Fair Value: Stainless Steel Sheet and Strip in Coils from Italy</u>, 64 Fed. Reg. 40,567, 40,570 (Dep't Commerce July 27, 1999).[1]  In making its original determination that SSSS was being sold at less than fair value, Commerce used the average-to-average comparison methodology and adhered to its practice of "zeroing" in comparing aggregate normal value to aggregate export price.

ThyssenKrupp challenged the determination at the Court of International Trade on various grounds, including a challenge to the figures now at issue, albeit on different grounds.  The court affirmed in part, reversed in part, and remanded the determination to Commerce.  <u>Acciai Speciali Terni S.p.A. v. United States</u>, 142 F. Supp. 2d 969 (Ct. Int'l Trade 2001).

Before the Court of International Trade reviewed Commerce's redetermination, the parties stipulated to a dismissal of the action, without prejudice and effective January 23, 2002.  ThyssenKrupp states that its agreement to dismiss its challenge to the original investigation was a result of the publication of Commerce's final results of its first administrative review, in which Commerce calculated a dumping margin of 0.66%

---

[1]  Final Determination at 64 Fed. Reg. 30,750, 30,757 (Dep't Commerce June 8, 1999).

2009-1363                                4

for imports between January 1999 and June 2000. ThyssenKrupp explains in its briefing that its agreement to the dismissal, terminating its challenge to the findings of dumping of SSSS, was a result of the significantly lower duties and cash deposit rate calculated for future entries.

B.    Proceedings before the World Trade Organization

In February 2004, the European Communities ("EC") asked the WTO to establish a dispute settlement panel to determine the legality of the United States' use of a zeroing methodology in its determination of antidumping duties. Request for the Establishment of a Panel by the European Communities, United States – Laws, Regulations and Methodology for Calculating Dumping Margins (Zeroing), WT/DS294/7/Rev.1 at 1, 11 (Feb. 19, 2004). The EC specifically challenged fifteen investigations, including Commerce's investigation of SSSS from Italy. Id. at para. 7.9 & n.119. The panel found, and on appeal the Appellate Body affirmed, that zeroing was inconsistent with the Antidumping Agreement, and recommended that the United States bring its actions into conformity with the Agreement. Panel Report, United States – Laws, Regulations and Methodology for Calculating Dumping Margins (Zeroing), WT/DS294/R (Oct. 31, 2005), aff'd by United States – Laws, Regulations and Methodology for Calculating Dumping Margins (Zeroing), WT/DS294 (May 9, 2006).

C.    Proceedings Pursuant to Section 129

The government followed the prescribed statutory process to determine whether and how to respond. Specifically, following consultation between the legislative and executive branches of government, the U.S. Trade Representative ("USTR") instructed Commerce to issue a determination that would make the investigation "not inconsistent with the findings of the panel or the Appellate Body." See 19 U.S.C. § 3538(b)(2).

As a result, Commerce recalculated the margins in the investigations at issue in order to implement the new margins prospectively on goods entering the country.[2] Commerce issued a preliminary determination with a new margin of 2.11% for ThyssenKrupp. ThyssenKrupp then challenged Commerce's underlying calculation of the average unit value for certain sales, arguing that there was a clerical error in the original investigation. ThyssenKrupp's suggested correction, if adopted, would bring the calculated margin below 2%, thus rendering it de minimis and resulting in the revocation of the antidumping duty order ab initio. See 19 U.S.C. § 1673(b)(3).

Commerce then allowed the parties to comment. In August 2007, Commerce issued final results that did not consider or correct the alleged error, stating that "the limited purpose of a section 129 proceeding is to reopen for revision those aspects of [Commerce's] original determination found to be inconsistent with the WTO Agreements," and that it was therefore inappropriate to consider unrelated clerical or computational errors. Section 129 Determination at 8. ThyssenKrupp then challenged Commerce's determination by filing a complaint in the Court of International Trade.

In considering ThyssenKrupp's complaint, the court analyzed Commerce's interpretation of the requirements of section 129 under the framework laid out in Chevron. ThyssenKrupp, 602 F. Supp. 2d at 1366-67 (applying Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984)). The court first found that the intended scope of section 129 is ambiguous. Id. The court specifically found the statute unclear as to whether Commerce's determination must amend only those

_____

[2] Commerce also stopped using zeroing in new and pending investigations. See Calculation of the Weighted-Average Dumping Margin During an Antidumping Investigation, 71 Fed. Reg. 77,722 (Dep't Commerce Dec. 20, 2006) (final modification).

aspects of the original determination found to violate the WTO agreements, or whether the proceeding allows for—or requires—other changes to the original determination, unrelated to the WTO violation. Id. The court then found that it was reasonable for Commerce to have determined, based on the statutory language and the goals of finality and fairness, that it would address only those issues affected by the WTO ruling in the context of a section 129 proceeding. Id. at 1367-68.[3]

ThyssenKrupp timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

DISCUSSION

We review the decision of the Court of International Trade de novo, "apply[ing] anew the same standard used by the court, and [we] will uphold Commerce's determination unless it is unsupported by substantial evidence on the record, or otherwise not in accordance with law." Mittal Steel Point Lisas Ltd. v. United States, 548 F.3d 1375, 1380 (Fed. Cir. 2008) (citation and internal quotation marks omitted).

I.

ThyssenKrupp argues that Chevron deference is inapplicable to Commerce's determination, which it characterizes as a determination of the legal scope of the agency's authority. Regardless of the standard of review, however, ThyssenKrupp argues that congressional intent as to the scope of section 129 actions is unambiguous. ThyssenKrupp contends that the Statement of Administrative Action ("SAA") accompanying the URAA makes clear that a section 129 proceeding is a "new" or

---

[3] The court further found that the USTR's directions to Commerce were in accordance with law. Id. at 1368. ThyssenKrupp does not appeal that aspect of the decision.

"second" antidumping determination, and as such, it is subject to comment and review just as the first proceeding was.

ThyssenKrupp further points out that Congress has shown an interest in having Commerce correct clerical errors at any time during a proceeding. Refusal to do so, according to ThyssenKrupp, is inconsistent with the objectives of fairness and accuracy, and forces the courts to knowingly affirm a determination that includes errors. ThyssenKrupp argues that section 129 does not preclude fixing errors, and that judicial review of a section 129 proceeding in the antidumping statute is not limited.

The government responds that <u>Chevron</u> deference is indeed applicable to this case because an agency has authority to fill in gaps in a statute it is required to implement. Within that framework, the government next contends that the statute is ambiguous as to whether Commerce is to consider aspects of an underlying investigation not related to the section 129 proceeding. Specifically, according to the government, the statute's requirement that Commerce issue a new determination consistent with the WTO's findings does not specify whether Commerce may address an issue not raised before the WTO.

The government next argues that Commerce's interpretation is reasonable because it comports with the purpose of the statute and the overall statutory scheme. The statutory language requires the USTR, Congress, and Commerce all to consult on "the matter," referring, according to the government, to the limited issue that was before the WTO. The focus of the consultations should therefore reasonably be considered the appropriate focus of Commerce's action.

The government states that the Court of International Trade rightly found that the statute did not compel Commerce to address issues outside the scope of the WTO decision, and that Commerce's decision meets the objective of finality in the antidumping scheme. The government points to the fact that section 129 determinations are implemented prospectively as support for the proposition that adverse WTO reports were not meant to affect issues otherwise finally decided. The government argues that other parties to the investigation have the right to expect finality from a ten-year old Commerce determination. The government emphasizes that ThyssenKrupp's argument is based on the same documents it had available to it during the original investigation and that its inability or unwillingness to formulate a full challenge during the original investigation is not a reason to grant it a second opportunity to litigate the claim now.

## II.

We agree with the government and affirm the Court of International Trade's decision upholding Commerce's reasonable interpretation of the statute. As a preliminary matter, we find that the court properly applied the <u>Chevron</u> framework to its analysis of Commerce's interpretation of the statute.

Commerce concluded that section 129 determinations "have a limited purpose" and that "[t]o correct alleged errors that were not raised as part of the WTO dispute and otherwise became final and conclusive years ago exceeds the scope of this section 129 proceeding." <u>Section 129 Determination</u> at 9. In contrast to ThyssenKrupp's assertions, the scope of Commerce's authority was not at issue here, as the agency

presumably retained the full scope of its authority within the bounds of the section 129 determination.  As such, analysis pursuant to the Chevron framework is appropriate.

The first step of Chevron requires a court to determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter." Chevron, 467 U.S. at 842.  Section 129 provides that Commerce shall "issue a determination in connection with the particular proceeding that would render the administering authority's action described in paragraph (1) not inconsistent with the findings of the . . . Appellate Body." 19 U.S.C. § 3538(b)(2).  The statute does not explicitly require—nor does it expressly prohibit—reopening the entirety of an otherwise closed investigation to consider issues neither raised before nor addressed by the Appellate Body.  If anything, its limited reference to making the action not inconsistent with the findings of the Appellate Body leans toward precluding the changes ThyssenKrupp is arguing for.  NTN Bearing Corp. v. United States, 74 F.3d 1204, 1208 (Fed. Cir. 1995), which ThyssenKrupp cites for the proposition that clerical errors should be corrected when brought to light during the pendency of a determination, is inapposite.  A rule that clerical or ministerial errors within the scope of non-final determinations may—and sometimes should—be corrected only begs the question.  The appropriate scope of the section 129 determination, however, remains ambiguous.  The SAA's characterization of section 129 determinations as "new" also does not answer the question of the contemplated scope of that determination.  Lastly, ThyssenKrupp's argument that correction of ministerial errors is not precluded by section 129 serves only to emphasize that the statute is ambiguous and certainly does

not mandate such corrections. Having established ambiguity, our analysis proceeds to an investigation of the reasonableness of Commerce's interpretation.

Where a statute "is silent or ambiguous with respect to the specific issue," the court considers "whether the agency's answer is based on a permissible construction of the statute." Chevron, 467 U.S. at 843. Here, we find persuasive the government's argument that the role of section 129 in the statutory scheme lends itself to Commerce's interpretation. As discussed above, nothing in the statutory language requires the reexamination of issues that were not before the WTO. The Court of International Trade correctly noted that section 129 "provides a procedural mechanism for aligning inconsistent determinations with the provisions of the WTO agreements," and that "allowing Commerce to expand the scope . . . to unlitigated issues" does not have clear relevance to this purpose. ThyssenKrupp, 602 F. Supp. 2d at 1367. This interpretation also fits with the balance Congress has struck between finality and accuracy in antidumping duty determinations. NTN Bearing emphasized the tension inherent in administrative determinations between finality and accuracy, both generally and in the context of the correction of ministerial errors in antidumping duty investigations. 74 F.3d at 1208; see also Dorbest Ltd. v. United States, 547 F. Supp. 2d 1321, 1348 (Ct. Int'l Trade 2008) (emphasizing that late-raised clerical errors may, but are not required to, be corrected at the discretion of Commerce). Parties to a proceeding have an interest in relying on final decisions of adjudicatory bodies. Here, ThyssenKrupp voluntarily withdrew its challenge to Commerce's original investigation, allowing that determination to become final, and the only continuing challenge to the determination was on grounds of zeroing. The parties' interest in finality is apparent and accounted for by Commerce's

interpretation of the statute.  Commerce's interpretation of section 129 here is thus based on a permissible construction of the statute and it strikes a reasonable balance by leaving undisturbed aspects of an investigation that the parties ceased to challenge years ago, while reopening those necessary to bring its determination into accordance with the WTO's ruling.

## CONCLUSION

For the foregoing reasons, we affirm the Court of International Trade's summary judgment decision upholding Commerce's reasonable interpretation of the scope of a section 129 proceeding.

## AFFIRMED